# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS HINKO, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | 06 C 2286 |
| | ) | |
| SCHINDLER ELEVATOR CORP., | ) | |
|     Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Thomas Hinko is a mechanic who has worked for several elevator and escalator companies throughout his career. At age 54, Hinko lost his job with defendant Schindler Elevator Corporation, which told him that due to economic reasons, it had to reduce its work force. Contending that Schindler fired him based on his age, Hinko sued Schindler for age discrimination under the Age Discrimination Employment Act (the "ADEA"). Schindler's motion for summary judgment on Hinko's age discrimination claim is before the court. Because Hinko has failed to set forth a prima facie case of age discrimination, Schindler's motion is granted.

**I.      Background**

    **A.      Local Rule 56.1**

Under Local Rule 56.1, a party seeking summary judgment must submit a statement of material facts, consisting of short numbered paragraphs accompanied by citations to admissible evidence. Loc. R. 56.1(a). The opposing party must admit or deny each paragraph and cite to supporting evidence. Loc. R. 56.1(b)(3)(A). Failure to include "specific references to the affidavits, parts of the record, and other supporting materials relied upon" in support of a denial

may cause the movant's facts to be deemed admitted to the extent that they are supported by the record. *See id*.; *Brasic v. Heinemann's Inc.,* 121 F.3d 281, 284 (7th Cir. 1997); *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 924 (7th Cir. 1994).

Many of Hinko's responses to Schindler's facts indicate that the facts are "disputed" or "otherwise disputed" and then cite to the entirety of Hinko's own statement of additional facts. This is improper. *Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004). Moreover, the court is not required to scour the record to unearth evidentiary support for a party's position. *See id.* Nevertheless, in the interests of justice, the court examined Hinko's statement of facts and attempted to match the relevant evidence to the disputed paragraphs in Schindler's statement of facts. This task properly belongs to Hinko, whose failure to comply with the longstanding local rules governing summary judgment motions means that he has forfeited any ability to express dissatisfaction with the court's efforts to reach the merits despite the problems with his Rule 56 submissions.

The court will thus consider facts in Schinder's statement of facts as disputed where Hinko properly directed the court's attention to evidence supporting his position or the court was able to readily identify the relevant evidence in Hinko's statement of additional facts. All other facts are deemed admitted. With this understanding, the following facts are derived from the parties' Local Rule 56.1 statements.

**B.     Facts**

**1.     Schindler's Business**

Schindler Elevator Corporation constructs, installs, modernizes, repairs, and services elevators, escalators and related equipment throughout the United States, including Illinois. Schindler's Chicago-Suburban office is responsible for Schindler's business operations in the

greater Chicago area. The Chicago-Suburban office consists of three departments: (1) the construction department (which installs new elevators and escalators in buildings under construction); (2) the modernization department (which upgrades or replaces equipment in existing buildings); and (3) the service department (which provides maintenance and repair services for customers with existing equipment).

Maintenance mechanics (who perform work on elevator and escalator equipment to keep it running) and repair mechanics (who fix equipment when it breaks down) work in the service department. Maintenance mechanics generally work alone on specific routes, each of which consists of numerous buildings in a specific geographic area that the mechanic regularly visits. In contrast, repair mechanics generally work as a team with an apprentice and perform specific repair jobs as needed.

There are three geographic zones in Schindler's Chicago-Suburban office: north, west, and south. Each zone currently contains nine to eleven maintenance routes, has its own repair team, and is managed by a service superintendent. Before 2005, Schindler had six repair teams who were not assigned to specific zones. Instead, they were assigned as needed in any zone and were managed by a separate service superintendent.

2.      **Hinko's Background**

Plaintiff Thomas Hinko has repaired escalators and elevators for over 25 years. He worked for various elevator and escalator companies throughout his career, including Peelle Door Company, Schindler Westinghouse (a predecessor of Schindler's), Mitsubishi, KONE, and Thyssen-Krupp. Although Hinko has held a mechanic's license in the elevator industry since 1977, he has focused his career on escalators since about 1980 and has not received continuing training on elevators. Hinko concedes that he has worked mostly on escalators since 1980,

-3-

prefers working on escalators over working on elevators, and has not received continuing training on elevators or kept up-to-date on technological advances in elevators. At his deposition, Hinko also testified that he would not have been interested in a route if it required substantial elevator work.

In the fall of 2005, Hinko worked as a mechanic on a repair team in the service department in Schindler's Chicago-Suburban office. At this time, Hinko's repair team was one of three in the Chicago-Suburban office that performed non-billable warranty repair work, which was known as "code-30" work.

### 3. The September 2005 Safety Meeting

In September of 2005, district service manager Randy Rainwater, who was a new manager, attended a safety meeting. During this meeting, Rainwater gave his typical "opening day speech to the guys" in which:

> We go around the room . . . and ask the guys to tell us their name, a little bit about them and how many years they have in the industry. And then we total them up at the end and make the point that we have all of this experience in the room. How powerful that is in our industry. Because I'm a very proud person when it comes to our industry.

Rainwater Dep. At 29-31.

This is a standard introduction technique in the industry. Hinko acknowledges that he has heard "a lot of people" use this technique and that it was not improper. Hinko Dep. At 47-48, 50. Only Hinko and two other employees at the meeting had more than 35 years' experience in the elevator/escalator industry. These other employees were mechanics Rich Baehr (who was 56 years old) and Nick Mancini (who was 64 years old).

### 4. The October Layoffs

In the Fall of 2005, district manager Jim Peterlin learned that Schindler's corporate office had decided to stop the funding that had supported the three repair teams performing code-30 repair work. Peterlin concluded that without this money, the service department's revenues could not support the full labor force and that he needed to eliminate at least two mechanics. Based on this conclusion, Peterlin decided to eliminate the three repair teams that were not assigned to a specific zone.

Peterlin directed Rainwater to assess the code-30 mechanics to determine whether they could be reassigned to other positions and to determine which two employees would be laid off. Rainwater consulted with the department's superintendents to determine the mechanics' capabilities and to assess whether they could be reassigned to other departments or a maintenance route.

Rainwater ultimately reassigned Jim Hearley (a repair mechanic who was qualified and experienced in elevator work in other business segments, such as modernization and construction) to work in the Chicago-Downtown branch office's modernization department. Rainwater also laid off maintenance mechanic Steve Tucker (whose age and qualifications are not discussed by the parties). Rainwater then reassigned Don Sonocki (another repair mechanic who was also experienced in elevator and escalator work) to work on a maintenance route that became vacant with Tucker's layoff. Sonocki was 41 years old at the time of the reassignment. Hinko admits that he is not familiar with Sonocki's capabilities. *See* Hinko Dep. at 43 ("I don't know what he is capable of doing, to tell you the truth"). He also does not dispute that Sonocki was experienced in both elevator and escalator work.

Because Hinko preferred and was experienced in escalator work and Schindler did not have any positions limited to escalator work, Rainwater decided not to reassign Hinko to another department or a maintenance route. On October 5, 2005, Rainwater told Hinko that he was being laid off. At this time, Hinko was 54 years old. According to Rainwater, he explained that the loss of funding and resulting need to cut back the labor force necessitated this action. At his deposition, Hinko recalled that Rainwater might have provided this explanation but could not recall any details because "[a]fter that point, I really wasn't listening to him much." Hinko Dep. at 38. When asked if he had any reason to dispute Rainwater's version of the conversation, Hinko said "I don't know." *Id*. at 39. Rainwater also told Hinko that if Schindler had the opportunity to hire mechanics for escalator work in the future, it would bring him back.

### 5. Post-Layoff Statistics

Schindler ultimately eliminated the three code-30 repair mechanic positions and reduced the service department's labor force by two mechanics. In November of 2005, immediately after the layoff, thirty-three elevator constructor mechanics, helpers and apprentices worked in the service department. Twenty-eight of these employees were over 40 years old, eleven were fifty years old or older, five were older than sixty, and five were younger than forty. After the layoff, nine employees were older than Hinko, who was 54.

### 6. Hinko's Return to Schindler

In the Spring of 2007, Schindler acquired a new large customer (Macy's) for service work in the Chicago-Suburban office. That office needed a mechanic with escalator repair experience for the new account. Thus, Schindler service manager Eric Buschick contacted Hinko and offered him the position. Hinko accepted. In this new position, Hinko worked primarily on escalators but on at least one occasion worked on an elevator.

In September of 2007, Schindler offered Hinko the opportunity to work on a maintenance route in the same district. This job required work on both escalators and elevators. Hinko rejected this opportunity, and Peterlin sent him a letter memorializing this decision. The letter stated:

> I undertand that Eric Buschick recently met with you to offer you a maintenance route within the Chicago Suburban District, and that you turned down this opportunity,
>
> I was disappointed to hear of your decision, but I understand that you have a continued preference for assignments that are limited to escalator work. Since you are not interested in the position, we will proceed to fill it with another mechanic.
>
> As you know, we do not have a regular position that is limited to escalator work, so our ability to assign you such work will continue to depend on our business needs, cycles, protocols, and service delivery methodology.

Peterlin Aff. Ex. 1.

Hinko did not respond to the letter or dispute any of the statements in the letter. Unbeknowst to Peterlin, however, the letter upset Hinko so much that he decided to resign. In opposition to Schindler's motion for summary judgment, Hinko also asserts that he turned down this position because it would have involved a pay decrease and required him to be on call to respond quickly in case someone got stuck in an elevator. Hinko felt that since he lived in Wisconsin, 180 miles away from the Chicago-Suburban office, he would be unable to perform the job. On November 12, 2007 Hinko told Schindler that he was resigning, effective November 14, 2007, to accept a position with another company.

## II. Discussion

### A. Summary Judgment

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue of any material fact." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir. 1992), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Moreover, a court should grant a motion for summary judgment only when the record shows that a reasonable jury could not find for the nonmoving party. *Valenti v. Qualex, Inc.*, 970 F.2d at 365; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.

Thus, in order to withstand a motion for summary judgment, the nonmoving party must show that a dispute about a "genuine" material fact exists; that is, the evidence is such that a reasonable jury could render a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. The nonmoving party may not merely rest upon the allegations or details in his pleading, but instead, must set forth specific facts showing that there is a genuine issue for trial. *See id*.; *Celotex Corp. v. Catrett*, 477 U.S. at 322.

The determination as to what facts are "material" in employment discrimination cases depends upon the substantive law of employment discrimination, and the burden of proof applicable under the law. *Williams v. Williams Electronics, Inc.*, 856 F.2d 920, 922 (1988). When considering motions for summary judgment in discrimination cases, the court applies these criteria with added rigor because the matters of intent and credibility are crucial issues. *See Sarsha v. Sears, Roebuck, & Co.*, 3 F.3d 1035, 1038 (7th Cir. 1993).

### A. Age Discrimination

The ADEA prohibits employers from discriminating based upon age. 29 U.S.C. § 623; *Raymond v. Ameritech Corp.,* 442 F.3d 600, 610 (7th Cir. 2006). Hinko asserts that his October 5, 2005, layoff violated the ADEA and opposes summary judgment using the well-known

-8-

burden shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Here, Schindler terminated Hinko as part of a reduction in force ("RIF"). *See Michas v. Health Cost Controls of Illinois, Inc.,* 209 F.3d 687, 693 (7th Cir. 2000) (a RIF occurs when an employer permanently eliminates a position from its workforce). To set forth a prima facie case of age discrimination based on a RIF, Hinko must present evidence that: (1) he was within the protected class (forty or older); (2) he was meeting his employer's reasonable expectations; (3) he suffered an adverse employment action; and (4) a younger employee who was similarly situated was treated more favorably. *See, e.g., Raymond v. Ameritech Corp.,* 442 F.3d at 610.

If Hinko establishes a prima facie case, Schindler must identify a legitimate, nondiscriminatory reason for the adverse employment action. If it does so, the burden returns to Hinko to rebut Schindler's proferred reason with evidence indicating that it is pretextual. *See id.*

The court's consideration of Schindler's motion for summary judgment begins and ends with the prima facie case. The parties agree that the only prong at issue is the fourth element: whether Schindler treated a younger, similarly situated employee more favorably than Hinko. Hinko contends that Schindler improperly retained mechanic Donald Sonocki and laid him off. In response, Schindler argues that it did not violate the ADEA because Sonocki, like Hinko, was over forty and thus was in the protected class. Schindler also asserts that Sonocki and Hinko were not similarly situated because Sonocki had experience and worked on both escalators and elevators, while Hinko specialized in escalators.

   1.   **Younger employee**

At the time of Hinko's dismissal, Hinko was fifty-four years old and Sonocki was forty-one years old. Schindler contends that Hinko's prima facie case fails because Sonocki is not an

actionably younger employee since both he and Hinko are in the protected class. Schinder's focus on membership in the protected class is misplaced as the question is not whether the allegedly similarly situated employee is over forty. Instead, it is whether he is substantially (*i.e.*, at least ten years) younger than the terminated employee. *See Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 892-93 (7th Cir. 1997). Sonocki was thirteen years younger than Hinko at the time of the restructuring. Thus, the court turns to whether Sonocki was similarly situated to Hinko.

### 2. Similarly Situated

To establish that an employer treated a similarly situated, younger employee more favorably, a plaintiff must show that he and the younger employee were materially comparable. *See Raymond v. Ameritech Corp.,* 442 F.3d at 610 (similarly situated employees possess "analogous attributes, experience, education, and qualifications"); *see also Henry v. Jones*, 507 F.3d 558, 564 (7th Cir. 2007) ("[t]he similarly situated inquiry is a flexible, common-sense one" that asks whether the retained employee is sufficiently comparable "to suggest that [the plaintiff] was singled out for worse treatment"). Relevant factors include whether the employees: (1) held the same or similar job; (2) were subject to the same standards; (3) were supervised by the same person; and (4) had comparable experience, education, and other qualifications. *See Ajayi v. Aramark Bus. Serv., Inc.,* 336 F.3d 520, 532 (7th Cir. 2003).

Schindler contends that Hinko and Sonocki were not similarly situated because Hinko was an escalator specialist and Sonocki worked on both escalators and elevators. The court agrees. Specifically, it is undisputed that since 1980, Hinko focused on escalator work and did not receive continuing training on elevators or keep up-to-date on technological advances in elevators. Hinko also made it clear to his supervisors that he preferred working on escalators

over working on elevators. In addition, he testified that he would not have been interested in a route if it required substantial elevator work.

Finally, he did not challenge Peterlin's letter stating that he only wanted to work on escalators and has not otherwise pointed to any evidence showing that he was equally qualified to work on escalators and elevators and that his supervisors knew he was qualified to do so. It may be true, as Hinko claims today, that he could have acquired expertise in elevators and that he would have preferred to remain employed at Schindler working on both escalators and elevators rather than being laid off. Hinko's capacity to learn, however, is not at issue. Instead, his qualifications and expertise at the time of the RIF, as compared with Sonocki's, are relevant.

This brings the court to Sonocki's qualifications and expertise. Hinko – an escalator specialist – admits that he did not "know what [Sonacki was] capable of doing." Hinko Dep. at 43. In addition, he did not deny Schindler's assertion that Sonacki was experienced in both elevator and escalator work. *See* Schindler's Facts at ¶ 16. Hinko's filings also do not point to any specifics regarding Sonocki's skill, experience, or qualifications.

Hinko bears the burden of establishing that he and Sonocki were similarly situated. *See Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 680 (7th Cir. 2002). He has failed to carry this burden. The heart of his position appears to be his belief that he could have learned to do elevator work and thus could have performed at the same level as Sonocki. An employer, however, is entitled to evaluate employees' actual qualifications and experience when deciding which employees to terminate during a RIF. *See Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 692 (7th Cir. 2006).

Hinko has not pointed to any evidence indicating that at the time of the RIF, he was equally qualified to work on escalators and elevators. He also has not directed the court's

attention to specific evidence showing that he (an escalator specialist) and Sonocki (who was "was experienced in both elevator and escalator work") were in fact similarly situated. In sum, the court sympathizes with Hinko's distress about Schindler's decision to lay him off and understands why he thought that his years of experience servicing escalators would have transferred to elevators. Nevertheless, for the above reasons, he has failed to establish that he and Sonocki were similarly situated. Thus, he cannot state a prima facie case of age discrimination.

**III. Conclusion**

Schindler's motion for summary judgment [#62] is granted. The clerk is directed to enter a Rule 58 judgment and to terminate this case from the court's docket.

DATE: May 23, 2008

_____
Blanche M. Manning
United States District Judge